Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XI

| HÉCTOR O. PADILLA CINTRÓN<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>Recurrido | TA2025RA00246 | *Revisión Administrativa procedente la División de Remedios Administrativo del Departamento de Corrección y Rehabilitación*<br><br>Caso núm.: PP1-96-25<br><br>Sobre: Liquidación de Sentencia |
|---|---|---|

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Juez Mateu Meléndez, la Juez Boria Vizcarrondo y el Juez Robles Adorno.

Robles Adorno, Juez Ponente.

### SENTENCIA

En San Juan, Puerto Rico, a 18 de noviembre de 2025.

El 19 de septiembre de 2025, el señor Héctor O. Padilla Cintrón (el señor Padilla Cintrón o el recurrente) presentó ante nos un recurso de *Revisión Judicial* en el que solicitó que revoquemos la *Resolución* emitida el 15 de agosto de 2025, notificada al recurrente el 26 de agosto de 2025, por el Departamento de Corrección y Rehabilitación (DCR o parte recurrida).[1]

En el aludido dictamen, el DCR determinó que, a partir del 27 de enero de 2011, fecha en que el recurrente fue sentenciado por el delito de asesinato en primer grado[2], era la fecha en que iniciaba el término para computar cuando el recurrente podía ser elegible para obtener el privilegio de libertad bajo palabra.

Por los fundamentos que expondremos a continuación, confirmamos la *Resolución* recurrida.

---

[1] Apéndice de la Revisión Judicial, Anejo 2.
[2] Art. 106 del Código Penal de 2004, 33 LPRA sec. 4734.

**I.**

El caso de autos tuvo su inicio el 14 de junio de 2025, recibida ante el DCR el 27 de junio de 2025, cuando el señor Padilla Cintrón instó una *Solicitud de remedio administrativo* en la que alegó que fue sentenciado en el año 2008.[3] No obstante, el 12 de noviembre de 2009, fue arrestado por incumplir con los términos dispuestos en la libertad bajo palabra concedida por el DCR. Ante ello, en octubre de 2010 le fue revocada la libertad bajo palabra.

Por otro lado, adujo que, en febrero de 2010, el Ministerio Público inició un proceso judicial en su contra por haber cometido el delito de asesinato en primer grado.[4] Así pues, el 27 de enero de 2011, fue encontrado culpable por el delito de asesinato en primer grado, delito por el cual se encuentra convicto.[5] Ante este cuadro, el recurrente argumentó que conforme la Ley Núm. 85 del 11 de octubre de 2022 (Ley Núm. 85-2022) y ), en el 12 de noviembre de 2034, cumpliría veinticinco (25) años de la pena impuesta, a partir del 12 de noviembre de 2009, el 12 de noviembre de 2034, cumpliría veinticinco (25) años de la pena impuesta para que nuevamente fuese considerado para obtener el privilegio de libertad bajo palabra. Consecuentemente, solicitó que el DCR corrigiera la fecha en que fue sentenciado para que constara correctamente desde cuando iniciaba la fecha que debía utilizarse para el computo de la fecha en que podía ser elegible para obtener dicho privilegio.

El 15 de julio de 2025, notificada al recurrente el 17 de julio de 2025, el DCR remitió una *Respuesta al Miembro de la Población Correccional* en la que sostuvo que, revisó las sentencias y la información contenida en la *Hoja de Liquidación de sentencia* fue

---

[3] *Véase* expediente administrative, pág. 3. El recurrente fue sentenciado por el delito de Apropiación Ilegal Agravada, Art. 193 del Código Penal de 2004, *supra* sec. 4821.
[4] Art. 106 del Código Penal de 2004, *supra* sec. 4734.
[5] *Íd.*

aplicada conforme la Ley Núm. 85-2022.[6] Por tanto, no procedía el argumento del recurrente.

Insatisfecho, el 21 de julio de 2025, recibida ante el DCR el 11 de agosto de 2025, arguyó que en la *Solicitud de remedio administrativo* no cuestionó la aplicación de la Ley Núm. 85-2022 ni el término de las sentencias para que la Junta de Libertad Bajo Palabra tuviera jurisdicción.[7] Argumentó que, estaba cuestionando la fecha que surgía en la *Hoja de liquidación de sentencia* dado que no era la fecha en que ingresó a una institución carcelaria. En esa línea, alegó que el 12 de noviembre de 2009, fue la fecha en que fue recluido en una institución penal. Por tanto, el DCR debía enmendar la fecha en la *Hoja de liquidación de sentencia* para que la Junta de Libertad Bajo Palabra pudiera obtener jurisdicción de su caso.

El 15 de agosto de 2025, notificada al recurrente el 26 de agosto de 2025, la parte recurrida remitió una *Respuesta de reconsideración al miembro de la población correccional* en la que determinó que, el 12 de noviembre de 2009, el recurrente fue ingresado a una institución correccional por incumplir con las condiciones de la libertad bajo palabra.[8] Empero, el 19 de octubre de 2010, el Tribunal de Primera Instancia emitió una *Sentencia* en la que revocó la libertad bajo palabra. Por tanto, resolvió que, partiendo del 19 de octubre de 2010, el recurrente fue sentenciado y desde la citada fecha inicia el cómputo para que este pueda adquirir el privilegio de libertad bajo palabra. Por tanto, resolvió que, a partir de dicha fecha este fue sentenciado y las fechas que constan en la *Hoja de Liquidación de Sentencia* son conforme los estatutos aplicables.

---

[6] *Íd.*, págs. 7-8.
[7] *Íd.*, págs. 9-10.
[8] *Íd.*, págs. 11-12.

Inconforme, el 19 de septiembre de 2025, el recurrente presentó una *Revisión Judicial* en la que coaligó el siguiente señalamiento de error:

> Err[ó] el DCR por conducto de la T[é]cnico de R[é]cord Criminal esto debido a que mi plant[e]amiento es claro [,] ya que desde que ingres[é] a la c[á]rcel el 12 de noviembre de 2009, por lo que es la fecha que debe tabular para el cálculo de los 25 años de manera ininterrumpida ya que desde la fecha este peticionario no ha vuelto a salir a la libre comunidad.

En atención a nuestra *Resolución*, el 29 de octubre de 2025, el DCR presentó un Escrito en cumplimiento de Resolución.

Con el beneficio de la comparecencia de las partes procederemos a resolver el caso ante nos.

**II.**

**A.**

Los organismos administrativos merecen la mayor deferencia posible de los tribunales. *Otero* v. *Toyota*, 163 DPR 716, 727 (2005). Tal deferencia se apoya en que las agencias administrativas tienen conocimiento experto y la experiencia especializada de los asuntos que le son encomendados. *Otero* v. *Toyota*, *supra*, pág. 728. Un principio establecido es que las determinaciones de las agencias administrativas tienen una presunción de legalidad y corrección en la que no deben intervenir los tribunales. *Rebollo* v. *Yiyi Motors*, 161 DPR 69, 78 (2004). Las determinaciones de hecho de las agencias tienen a su favor una "presunción de regularidad y corrección que debe ser respetada mientras la parte que las impugne no produzca evidencia suficiente para derrotarlas." *Henríquez v. Consejo Educación Superior*, 120 DPR 194, 210 (1987). Nuestro Tribunal Supremo ha expresado que los tribunales no deben intervenir o alterar las determinaciones de hechos de un organismo administrativo "si las mismas están sostenidas por evidencia sustancial que surja del expediente administrativo considerado en su totalidad". *Otero Mercado v. Toyota de P.R. Corp.,* 163 DPR 716,

727-728 (2005); *Domingo v. Caguas Expressway Motors*, 148 DPR 387, 397 (1999). Las determinaciones de hecho serán sostenidas por el tribunal, si se basan en evidencia sustancial que no obra en el expediente administrativo. *Vázquez v. Consejo de Titulares*, 216 DPR ___ (2025), 2025 TSPR 56. Ejercitando un criterio de razonabilidad y deferencia, los tribunales no deben intervenir o alterar las determinaciones de hecho realizadas por una agencia si están sostenidas por evidencia sustancial que surja del expediente. *Otero* v. *Toyota, supra*, pág. 728. El máximo foro judicial ha definido evidencia sustancial como aquella "que una mente razonable podría aceptar como adecuada para sostener una conclusión". *Otero* v. *Toyota, supra*, pág. 728; *Ramírez v. Depto. de Salud*, 147 DPR 901, 905 (1999). La parte que impugne una determinación de hecho de una agencia debe convencer al foro apelativo que la determinación no fue basada en evidencia sustancial. *Otero v. Toyota, supra*, pág. 728. Para rebatir la determinación que cuestiona, debe demostrar que existe otra evidencia en el expediente que reduzca el valor probatorio. *Otero* v. *Toyota, supra*, pág. 728. Si la parte no demuestra en la revisión judicial otra evidencia sustancial que sostenga la determinación de la agencia, entonces no se alterará la determinación de la agencia. *Otero* v. *Toyota, supra*, pág. 728. La parte que alegue ausencia de evidencia sustancial debe demostrar que existe:

> "[O]tra prueba en el récord que razonablemente reduzca o menoscabe el peso de tal evidencia, hasta el punto de que un tribunal no pueda, concienzudamente, concluir que la evidencia sea sustancial [...] hasta el punto de que se demuestre claramente que la decisión [del organismo administrativo] no está justificada por una evaluación justa del peso de la prueba" que tuvo ante su consideración. *Metropolitan S.E. v. A.R.P.E.*, 138 DPR 200, 213 (1995) citando a *Hilton Hotels v. Junta de Salario Mínimo*, 74 DPR 670, 686 (1983).

El máximo foro judicial ha definido evidencia sustancial como aquella "que una mente razonable podría aceptar como adecuada para sostener una conclusión". *Otero* v. *Toyota, supra,* pág. 728; *Ramírez v. Depto. de Salud*, 147 DPR 901, 905 (1999). La parte que impugne una determinación de hecho de una agencia debe convencer al foro apelativo que la determinación no fue basada en evidencia sustancial. *Otero v. Toyota, supra*, pág. 728. Para rebatir la determinación que cuestiona, debe demostrar que existe otra evidencia en el expediente que reduzca el valor probatorio. *Otero* v. *Toyota, supra,* pág. 728. Si la parte no demuestra en la revisión judicial otra evidencia sustancial que sostenga la determinación de la agencia, entonces no se alterará la determinación de la agencia. *Otero* v. *Toyota, supra*, pág. 728.

Por otro lado, respecto a las conclusiones de derecho, la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, Ley Núm. 38-2017, señala que éstas pueden ser revisadas en todos sus aspectos. Sec. 4.5 de la LPAU, 3 LPRA sec. 9675. Las conclusiones de derecho serán revisables en todos sus aspectos por un tribunal. *Vázquez v. Consejo de Titulares, supra.* La interpretación de la ley es una tarea que le corresponde a los tribunales y como corolario, los tribunales deben revisar las conclusiones de derecho en todos sus aspectos. *Vázquez v. Consejo de Titulares, supra.* Ello, como mecanismo interpretativo del poder judicial. *Íd.* Ahora bien, lo anterior "no implica que los tribunales revisores tienen la libertad absoluta de descartar libremente las conclusiones e interpretaciones de la agencia". *Otero v. Toyota, supra*, pág. 729. Consecuentemente, cuando un tribunal llega a un resultado distinto al de la agencia, éste debe determinar si la divergencia es a consecuencia de un ejercicio razonable y fundamentado de la discreción administrativa, ya sea por la pericia, por consideraciones de política pública o en la apreciación de la

prueba. *Íd.* Dicho de otro modo, "[e]l tribunal podrá sustituir el criterio de la agencia por el propio solo cuando no pueda hallar una base racional para explicar la decisión administrativa". *Íd.*

No obstante, la deferencia reconocida a la decisión de una agencia administrativa cede en las siguientes circunstancias: (1) cuando no está basada en evidencia sustancial; (2) cuando el organismo administrativo ha errado en la aplicación de la ley, y (3) cuando ha mediado una actuación irrazonable o ilegal. Si el tribunal no se encuentra ante alguna de estas situaciones, aunque exista más de una interpretación razonable de los hechos, debe sostener la que seleccionó la agencia encargada. *Otero* v. *Toyota, supra*, pág. 730. Al ejercer la función revisora, el tribunal está obligado a considerar la especialización y experiencia de la agencia sobre las cuestiones que tuvo ante sí. *Rebollo* v. *Yiyi Motors*, 161 DPR 69, 78 (2004). Por otro lado, las determinaciones de derecho, el tribunal tiene amplia autonomía para revisarlas en todos sus aspectos. *Rebollo* v. *Yiyi Motors, supra*, pág. 77.

**B.**

El Art. VI, Sec. 19, Const ELA [Const P.R], LPRA, Tomo 1, establece como política pública que, "...reglamentar las instituciones penales para que sirvan a sus propósitos en forma efectiva y propender, dentro de los recursos disponibles, al tratamiento adecuado de los delincuentes para hacer posible su rehabilitación moral y social". Cónsono con lo anterior, la ley orgánica del Departamento de Corrección y rehabilitación, Art. 2 de *El Plan de Reorganización del Departamento de Corrección y Rehabilitación de 2011*, Plan de Reorganización Núm. 2 de 21 de noviembre de 2011 (Plan de Reorganización Núm. 2-2011), según enmendado, 3 LPRA., Ap. XVIII, Art. 2, el DCR tiene el deber de custodiar y proveer una rehabilitación a las personas confinadas. Asimismo, el citado artículo dispone lo siguiente:

Con la aprobación de este Plan, se decreta como política pública del Gobierno de Puerto Rico la creación de un sistema integrado de seguridad y administración correccional donde las funciones y deberes se armonicen en un proceso facilitador a la imposición de penas y medidas de seguridad, así como a la custodia de los ciudadanos que han sido encontrados incursos en la comisión de un delito o falta y que establezcan procesos de rehabilitación moral y social del miembro de la población correccional o transgresor, a fin de fomentar su reincorporación a la sociedad.

Con ello, dentro de las facultades del Secretario del DCR, dicho ente administrativo tiene la facultad de "adoptar, establecer, desarrollar, enmendar, derogar e implementar reglas, reglamentos, órdenes, manuales, normas y procedimientos para el funcionamiento efectivo del Departamento y de los organismos bajo su jurisdicción, a los fines de regir la seguridad, la disciplina interna y la conducta de funcionarios, empleados y de la clientela, así como los programas y servicios". Art. 7 (aa) del Plan Núm. 2-2011 *supra* sec. Ap. XVIII, Art. 7. Por otro lado, tiene la facultad de "hacer las evaluaciones, investigaciones y rendir los informes necesarios sobre la conducta del miembro de la población correccional y los transgresores; emitir opiniones sobre la imposición de fianzas y mantener una coordinación efectiva con la Junta de Libertad Bajo Palabra o el Tribunal". Art. 7 (z) del Plan Núm. 2-2011 *supra* sec. Ap. XVIII, Art. 7. También, ostenta el deber de supervisar las personas que estén en condiciones de libertad provisional que le fueron impuestas a los confinados que estén bajo su jurisdicción. Art. 7 (ff) del Plan Núm. 2-2011 *supra* sec. Ap. XVIII, Art. 7. De igual forma, cuando una persona confinada incumpla con las condiciones de libertad provisional debe informar a los tribunales y a los funcionarios pertinentes sobre dicho incumplimiento. Art. 7 (gg) del Plan Núm. 2-2011 *supra* sec. Ap. XVIII, Art. 7.

En otros términos, la Regla V del *Reglamento para atender las solicitudes de remedios administrativos radicadas por los miembros de la población correccional,* Reglamento Núm. 8583 del 4 de mayo

de 2015 (Reglamento Núm. 8583) rige cómo se deben llevar a cabo los procedimientos ante el DCR con relación a los reclamos de los confinados. Con ello, la Regla VI del Reglamento Núm. 8583 dispone que, la División de Remedios administrativos del DCR tendrá jurisdicción para atender las solicitudes de remedio radicadas por los confinados en cualquier institución o facilidad correccional que se encuentre. Los incidentes de los cuales un miembro de una institución correccional es:

a. Actos o incidentes que afecten personalmente al miembro de la población correccional en su bienestar físico, mental, en su seguridad personal o su plan institucional.
b. Cualquier incidente o reclamación comprendida bajo las disposiciones de este Reglamento.
c. Cuando el superintendente impone la suspensión de privilegios sin celebración de vista alguna, conforme la reglamentación vigente sobre la "Suspensión de Privilegios por Razones de Seguridad"
d. Alegaciones de violencia sexual por parte de un miembro de la población correccional conforme "Prison Rape Elimination ACT" (PREA) (115.51ª, d,115.52-b1, b2, b3).

## c.

El Art. 3 de la *Ley de la Junta de Libertad*, Ley Núm. 118 de 22 de julio de 1974 (Ley Núm. 118-1974), según enmendada, 4 LPRA sec. 1503, dispone que la Junta de Libertad Bajo Palabra tiene autoridad para decretar la libertad bajo palabra de cualquier persona recluida en cualquier institución penal de Puerto Rico que ha sido convicta a tenor con la clasificación de gravedad del delito. Al respecto, la elegibilidad de las personas convictas conforme al Código Penal de Puerto Rico será determinada de acuerdo con la clasificación de gravedad de delito y las condiciones para la concesión que establece el Código Penal de Puerto Rico. Art. 4 de la Ley Núm. 118-1974, *supra* sec. 1504. En esa línea, el Art. 308 del Código Penal de 2012, *supra* sec. 5416, estatuye que toda persona convicta bajo las disposiciones del Código Penal podrá ser elegible para libertad bajo palabra luego del cumplir los términos que dispone el citado artículo y la Ley Núm. 118-1974. En atención a

nuestra controversia, el Art. 3 de la Ley Núm. 118-1974 *supra* sec. 1503 estatuye que,

> (1) Si la persona ha sido convicta de delito grave de primer grado o se ha determinado reincidencia habitual, puede ser considerada para libertad bajo palabra al cumplir veinticinco (25) años naturales de su sentencia, o diez (10) años naturales, si se trata de un menor procesado y sentenciado como adulto.

De un examen legislativo, denotamos que el Art. 308 del Código Penal de Puerto Rico tuvo varias enmiendas. Veamos.

La Ley Núm. 246 del 24 de diciembre de 2014 (Ley Núm. 246-2014), enmendó el Art. 308 del Código Penal de Puerto Rico a los fines de imponer términos para que las personas convictas puedan obtener el beneficio de libertad bajo palabra. Luego, la Ley Núm. 30 de 7 de junio de 2022 (Ley Núm. 7-2022) excluyó varios delitos en los que un convicto no podía beneficiarse de la libertad bajo palabra. Conforme esos principios, la Ley Núm. 85-2022 enmendó el Art. 308 del Código Penal de 2012, *supra*, a los fines de atemperar dicho artículo, a los términos estatutarios enmendados en la Ley Núm. 118-1974, para que un convicto cualifique para ser considerado para el beneficio de la libertad bajo palabra. A tenor con lo anterior, la Ley Núm. 85-2022, estableció que una "persona convicta por el delito de asesinato en primer grado, cuya pena sea de noventa y nueve años o reincidencia habitual <u>podrá ser considerada para libertad bajo palabra al cumplir veinticinco (25) años de su sentencia</u>, o diez (10) años, si se trata de un menor de edad procesado como adulto". Asimismo, la Sección 3 de la Ley Núm. 85-2022, estatuyó que dicha ley aplicará de forma retroactiva, "independientemente del Código Penal o Ley Penal Especial vigente al momento de los hechos delictivos, siempre y cuando resulte favorable para la persona condenada".

En esa línea, el Art. 3 de la Ley Núm. 85-2024, delimitó de manera expresa los delitos en los que un convicto no puede gozar

del privilegio de libertad bajo palabra. Cónsono con ello, el referido artículo decretó que una persona convicta de asesinato en primer grado, cuya pena sea de noventa y nueve (99) años o reincidencia habitual la <u>persona podrá ser considerada para libertad bajo palabra al cumplir veinticinco (25) años de su sentencia</u> o diez (10) años si se trata de un menor de edad procesado y sentenciado como adulto. Sin embargo, excluye a los convictos al amparo del inciso (c) del Artículo 93, estos estarán excluios del privilegio de libertad bajo palabra. Así las cosas, la Sección 3 de la Ley Núm. 85-2024, afirma como cláusula de reserva que:

> Esta Ley aplicara de manera retroactiva/ independientemente del Código Penal o Ley Penal Especial vigente al momento de los hechos delictivos/ siempre y cuando resulte favorable para la persona condenada. Las cláusulas de prohibiciones absolutas de libertad bajo palabra en los delitos de leyes penales especiales no serán aplicables al caso de menores juzgados y sentenciados como adultos cuando contravengan lo aquí establecido.

En esa línea, la Sección 3 de la Ley Núm. 85-2024, ordena que,

> Sección 3.-Cláusula de Exclusión de Jurisdicción de la Junta de Libertad Bajo Palabra. La Junta no tendrá jurisdicción para atender los casos de las personas convictas por los delitos de agresión sexual en todas sus modalidades/ agresión sexual conyugal, violación, actos lascivos, sodomía, incesto, secuestro, secuestro agravado y pornografía infantil/ incluyendo sus tentativas, no podrán beneficiarse del privilegio de libertad bajo palabra, indistintamente de la fecha de la comisión del acto delictivo ni el Código penal o la ley especial utilizada para dictar sentencia, incluyendo los Códigos Penales de 1974, 2004 y 2012.

> [...]

> Las personas que al momento de la aprobación de esta Ley estén referidas bajo la consideración de la Junta de Libertad Bajo Palabra sin que haya una determinación final, no cualificaran para este privilegio, indistintamente de la etapa procesal en que se encuentre la referida solicitud.

**III.**

En el caso de epígrafe, el señor Padilla Cintrón argumentó que el DCR erró en no subsanar en la *Hoja de Liquidación de Sentencia*

la fecha en que fue ingresado en una institución carcelaria. Ello, puesto que a partir del 12 de noviembre de 2009 debía iniciar el término para computar la fecha en que el recurrente podía ser considerado para la libertad bajo palabra.

Conforme con las normas jurídicas pormenorizadas, nuestra Constitución consagra como política pública que una persona convicta debe tener un tratamiento adecuado y recibir rehabilitación. Ante ello, la ley orgánica creó el Departamento de Corrección y Rehabilitación en la que le delegó a dicho ente administrativo la potestad de promover la rehabilitación de las personas convictas. Con ello, para que las personas convictas puedan tener una rehabilitación idónea, la Junta de Libertad Bajo Palabra tiene la autoridad para conceder que una persona pueda beneficiarse del privilegio de libertad bajo palabra si cumple con lo dispuesto estatutariamente. A esos fines, el DCR tiene el deber de rendir los informes necesarios para que una persona confinada pueda ser considerada por la Junta de Libertad para que se le conceda el privilegio de libertad bajo palabra. Ahora bien, en lo que atine a nuestra controversia, una persona convicta por cometer **el delito de asesinato en primer grado**, cuya pena sea de noventa y nueve (99) años <u>podrá ser considerada para libertad bajo palabra al cumplir veinticinco (25) años de su sentencia.</u> Al respecto, una vez la persona cumpla con el término de veinticinco (25) años con relación a la pena de noventa y nueve (99) años, entonces la persona podrá ser considerada para el beneficio de libertad bajo palabra.

Tras un análisis detallado del expediente, resolvemos que el DCR no incidió en el error señalado por el recurrente.

Es forzoso concluir que, la fecha en la que el recurrente puede cualificar para la libertad bajo palabra es desde el 27 de enero de 2011 y no a partir de la fecha señalada por el recurrente. Lo anterior responde a que, el señor Padilla Cintrón el 12 de noviembre de 2009

fue reingresado a una institución carcelaria tras incumplir con las condiciones impuestas en una sentencia impuesta en probatoria en el 2008 por cometer el delito de apropiación ilegal agravada. Así pues, el 24 de julio de 2012, el recurrente extinguió la sentencia por dicho delito. Ahora bien, el 27 de enero de 2011, el señor Padilla Cintrón fue sentenciado a una pena de noventa y nueve años (99) por cometer el delito de asesinato en primer grado, pena que aún se encuentra cumpliendo. A raíz de ello, es a partir del 27 de enero de 2011 que comienza a transcurrir el término para calcular en que año podría el recurrente ser considerado para la libertad bajo palabra. Contrario a lo alegado por el recurrente, el 12 de noviembre de 2009, el señor Padilla Cintrón no fue sentenciado, toda vez que fue reingresado a una institución carcelaria. Ello, tras incumplir con las condiciones impuestas de la libertad bajo palabra tras haber sido encontrado culpable por el delito de apropiación ilegal agravada.[9] Ciertamente, a partir de la fecha en que el recurrente fue sentenciado por el delito de asesinato en primer grado, es que inicia a decursar el término para que este pueda ser considerado para beneficiarse del privilegio de libertad bajo palabra tras haberse extinguido la pena por el delito de apropiación ilegal agravada. Por tanto, reiteramos que, la fecha que debe considerarse para referir el caso a la Junta de Libertad Bajo Palabra es la fecha en que el señor Padilla Cintrón fue encontrado culpable y sentenciado por el delito de asesinato en primer grado.

A la luz de lo esbozado, resolvemos que el DCR no erró en indicar que la fecha en que debe iniciar el cómputo de veinticinco (25) años para que el recurrente pueda ser considerado para obtener la libertad bajo palabra es desde el 27 de enero de 2011.

---

[9] Art. 193 del Código Penal de 2004, 33 LPRA sec. 4821.

**IV.**

Por los fundamentos que anteceden, se confirma la *Resolución* recurrida.

Notifíquese.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones